# IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **MISTY D. MCGRADY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **NO. 3:17-cv-00390** |
| **v.** | ) | |
| | ) | **JUDGE CAMPBELL** |
| **MARK ESPER,** | ) | **MAGISTRATE JUDGE BROWN** |
| **Secretary of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM</u>

Pending before the Court is Defendant's Motion for Summary Judgment (Doc. No. 94). Plaintiff filed a Response (Doc. No. 99) and Defendant filed a Reply (Doc. No. 107). Defendant filed a Statement of Undisputed Facts in support of the motion (Doc. No. 97) and Plaintiff responded (Doc. No. 102). Plaintiff filed a Statement of Additional Undisputed Facts (Doc. No. 103) and Defendant responded (Doc. No. 108).

For the reasons stated below, Defendant's Motion for Summary Judgment is **DENIED**.

## I. FACTUAL BACKGROUND

Plaintiff complains Defendant's decision not to hire her for a position for which she was qualified, and to hire a younger candidate instead, was based on age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §633a. The following facts relevant to her claim are presented in the light most favorable to Plaintiff.

Plaintiff is a former dual status military technician with the National Guard. Dual status technicians must be a member of the National Guard. *See* 32 U.S.C. § 709(b). If a dual-status technician is separated from the National Guard, the technician must also be "promptly

separated from military technician (dual status) employment. *Id.* A non-dual status technician, on the other hand, is a civilian employee. 10 U.S.C. § 10217. Plaintiff was attempting to move from a dual status position to a non-dual status position, which would have allowed her to remain in her job after ending her service with the National Guard.

Plaintiff began her employment with the National Guard in 2006 as a dual-status GS-11 Account IR Evaluator (later referred to as an "auditor") with the Internal Review section of the U.S. Property and Fiscal Office (USPFO). (Doc. No. 102, ¶¶ 8-11.) Because Plaintiff was a dual status employee, she was required to be a member of the National Guard to retain her position as auditor. (*Id.* ¶ 12.) Plaintiff worked in Internal Review from April 2006 until February 2010. (*Id.*, ¶ 17.) While working at Internal Review, Plaintiff served as temporary lead auditor (a GS-12 position) from February 2009 to February 2010. In February 2010, Plaintiff applied for a dual-status position as staff accountant in the Comptroller's Division and was transferred to that division in March 2010. (*Id.* ¶¶ 38, 41.)

Plaintiff had been trying to get a non-dual-status position since she started working for Internal Review in 2006, so that she could retire at the end of her enlistment and keep her job. (*Id.*, ¶ 54, 56.) Plaintiff told Col. William Hardin, head of the USPFO, that she "needed him to go to bat for her or she would have to find another agency to work for when her contract runs out in October 2011. (*Id.*, ¶ 57 (citing McGrady Dep., Doc. No. 95-1 at 47-8).) In January 2011, Plaintiff applied for a non-dual status auditor position at Internal Review (her former job, except as a non-dual status position), but was not selected. (Doc. No. 102, ¶ 60.) Plaintiff retired from the National Guard and resigned from her dual-status position as a staff accountant in October 2011. (*Id.*, ¶¶ 43, 46.)

Plaintiff alleges Maj. Hess showed favoritism to younger employees.[1]  Specifically, Maj. Hess hired a young officer, Dannie Frederick, to work in Internal Review.  Plaintiff alleges Maj. Hess agreed to take on 1st Lt. (now Captain) Janna Moore, as a management analyst "to groom some folks to be auditors." (Hess. Dep., Doc. No. 95-2 at 15-17.)  Plaintiff claims Moore received preferential treatment and "advanced rapidly." (McGrady Aff., Doc. No. 101, ¶ 5.)  According to Plaintiff, Moore studied for her accounting classes while "on the clock," and received annual performance reviews (Plaintiff was not reviewed annually). (Doc. No. 101, ¶¶ 16, 17.) Plaintiff also claims Maj. Hess, while assigned to a different division than Internal Review, lobbied for Moore to receive a promotion to a GS-11 auditor position. (McGrady Aff., Doc. No. 101, ¶ 20.) Ultimately, the GS-11 auditor position was given to different employee, who was in his 50s, but Moore was promoted two months later when another GS-11 position became available. (Doc. No. 108, ¶ 7.)

In January 2011, Plaintiff applied for a non-dual status auditor position that was open to three categories of applicants (referred to as "areas of consideration"): (1) current non-dual status employees; (2) current dual-status employees; and (3) open to the public.  (Doc. No. 102, ¶ 71.)  The applicants are presented to the selecting official, one category at a time. (*Id*.)  If the supervisor decided not to offer the position to the applicant(s) in the first category, he or she could request candidates under the second category; and if none in the second category were selected, he could request the candidates in the third category. (*Id*., ¶ 74.)  At each stage, the supervisor received the names of the candidates in the new category together with the

---

[1] Plaintiff did not lodge any official complaints of age discrimination until she contested her nonselection for the non-dual status auditor position in 2011.

candidates he or she had previously interviewed, so that at stage two the supervisor could review candidates from stages one and two, and at stage three he or she could review candidates from categories one, two, and three. (Celatka Dep., Doc. No. 95-6 at 19-20.)

Three candidates met the minimum qualification for the position – by coincidence, one candidate in each applicant category. (*Id*., ¶ 73.) Plaintiff, as a current dual-status employee, was interviewed by Maj. Hess and Lt. Col. Elliot Pacetti as a part of category two. Maj. Hess, who had previously been Plaintiff's supervisor, was familiar with her qualifications and said he did not want to discuss them during the interview. (Doc. No. 102, ¶ 82; Doc. No. 108, ¶ 14). Instead, Maj. Hess presented Plaintiff with a series of scenario-based questions. (*Id*.) Following the interview, Lt. Col. Pacetti voiced concern about Plaintiff's interpersonal skills and "some of the attitude she was displaying during the interview." (Hess Dep., Doc. No. 95-2 at 34.) Maj. Hess said he did not have the same concern about Plaintiff's attitude during the interview, but knew Plaintiff had a history of problems with interpersonal skills. (*Id*.) Specifically, Maj. Hess recalled that clients had complained of her attitude toward them, but said that he had not personally witnessed her having difficulties interacting with others. (*Id*. at 35.)

After Plaintiff's interview, Maj. Hess decided to move on to the third category of applicants, those from the general public, in order to see what other qualified candidates were available. (Doc. No. 102, ¶ 86.) During stage three, Plaintiff was offered the opportunity to re-interview, but declined to do so. (Doc. No. 108, ¶ 21.)

Ultimately, Ms. Miller, the candidate interviewed at the third stage, was selected for the non-dual-status auditor position. Ms. Miller was 32 years old at the time. (Doc. No. 102, ¶ 94.) Plaintiff was 50 years old. (Doc. No 102, ¶ 61.) Maj. Hess stated that Plaintiff was qualified for the position and would have been his second choice. (Hess Decl., Doc. No. 95-2 at 55.)

Maj. Hess explained that he chose Ms. Miller for the position because she "gave us a much more qualified individual and gave a much better interview, and [he] thought that she would be a good fit for the organization." (Hess Dep., Doc. No. 95-2 at 39.) Additionally, Maj. Hess said Ms. Miller's interview was one of the better interviews he has had: "I had a highly skilled individual that knew what she was talking about. Very personable, very professional. It just made it much more enjoyable for both sides." (*Id*. at 38.)

Explaining why Ms. Miller was the "absolute best qualified and the most desirable candidate," Maj. Hess stated:

> [Ms. Miller] had documented supervisory experience, and, per her reference, was a very capable leader. Also, while Ms. McGrady had relevant auditing experience, Ms. Miller had a greater depth of professional auditing experience as evidenced by her resume. For example, [Ms. Miller] had worked for a large corporate structure which is most like the Tennessee National Guard. Both experience and leadership qualities are very desirable attributes and exactly what I need in my section. Additionally, the selectee came across as a more effective communicator, one who would be very approachable by our client base. Particularly, in the interview she appeared to communicate in a more professional and yet amicable manner than Ms. McGrady. A diplomatic and effective communication style is important in the identification and resolution of auditing problems with a clientele that includes high-ranking military commanders and upper level civilian managers who hold highly visible positions and whose programs are susceptible to a high levels [sic] scrutiny from public and governmental oversight.

(Hess Decl., Doc. No. 95-2 at 54-55.)

After Plaintiff learned she had not been selected, she requested a meeting with Col. Bates and Col. Andy Hardin. (McGrady Aff., Doc. No. 101, ¶ 34.) Maj. Hess had discussed his reasons for selecting Ms. Miller for the position with Col. Bates, and Col. Bates signed off on the selection. (Bates Depo., Doc. No. 95-2 at 13, 15.) Plaintiff asked the colonels how they could justify the expense of training someone when Plaintiff already had the requisite training.

(McGrady Depo., Doc. No. 95-1 at 80.) Plaintiff claims Col. Bates said, "Well, when you consider the longevity of the selectee, it's not that big of a deal." (*Id.*)

On May 24, 2011, Plaintiff timely filed a formal administrative complaint of discrimination alleging that her non-selection was the result of unlawful discrimination based on age. (Am. Compl., Doc. No. 26, ¶ 78.) After a lengthy dispute within the National Guard as to whether Plaintiff's complaint was civilian or military, Plaintiff filed this action. The Court granted a motion to dismiss several defendants, holding that the acting Secretary of the Army should be the only defendant in this case, and all claims except for Plaintiff's claim of age discrimination. (Doc. No. 53.)

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's claims. *Id.*

In evaluating a motion for summary judgment, the court views the facts in the light most favorable for the nonmoving party and draws all reasonable inferences in favor of the nonmoving party. *Bible Believers v. Wayne Cty., Mich.*, 805 F.3d 228, 242 (6th Cir. 2015); *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003). The Court does not

weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Rather, the Court determines whether sufficient evidence has been presented to make the issue of material fact a proper question of fact. *Id.* The mere scintilla of evidence in support of the nonmoving party's position is insufficient to survive summary judgment; instead, there must be evidence of which the trier of fact could reasonably find for the nonmoving party. *Rodgers* 344 F.3d at 595.

In ruling on a motion for summary judgment, "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). In determining whether a genuine issue of material fact exists on a particular issue, the court is entitled to rely only upon those portions of the verified pleadings, depositions, and answers to interrogatories, and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## B.  Age Discrimination

The federal sector ADEA, 29 U.S.C.A. § 633a, provides in relevant part:

> All personnel actions affecting employees or applicants for employment who are at least 40 years of age … in military departments as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds) … shall be made free from discrimination based on age.

"To prevail on a claim under ADEA, it is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's … language requires that a plaintiff 'prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." *Scheick v. Tecumseh Pub.*

*Sch.*, 766 F.3d 523, 529 (6th Cir. 2014) (quoting *Gross v. FBL Fin. Servs, Inc.*, 557 U.S. 167, 177-8 (2009).

The ADEA has separate provisions applicable to private-sector and federal-sector employees. *Compare* 29 U.S.C.A. § 633a(a) (requiring that actions be "free from any discrimination based on age") *with* 29 U.S.C.A. § 623 (prohibiting discrimination because of … age"). The Supreme Court, in *Gross*, held that the private-sector ADEA required a plaintiff to show age was the "but for" cause of the employment action. *Gross*, *557* U.S. at 177. Plaintiff urges the Court to follow the D.C. Circuit and decline to apply *Gross* to federal sector ADEA claims. (Pl. Br., Doc. No. 99 at 15 (citing *Ford v. Mabus*, 629 F.3d 198, 207 (D.C. Cir. 2010)). In *Ford*, the court held the "but for" standard does not apply to federal-sector ADEA claims and a plaintiff may establish liability by showing that "age was a factor in the challenged personnel action." *Ford*, 629 F.3d at 207.

The Sixth Circuit has not authoritatively decided this question. The Court is unaware of any appellate court that has adopted the D.C. Circuit's holding in *Ford*, and the Ninth and Eleventh Circuits have specifically rejected the decision. *See Shelley v. Geren*, 666 F.3d 599, 606-07 (9th Cir. 2012); *Babb v. Sec'y, Dept. of Veterans Affairs*, 743 F. App'x. 280, 287 (11th Cir. 2018).

Although the Sixth Circuit has not addressed the applicability of *Gross* to federal-sector ADEA claims, the Court believes it would apply the same standard to both private and federal sector claims. Historically, the Sixth Circuit has evaluated private and federal sector ADEA claims using the same standard, despite the slight difference in language. *See e.g.*, *Parnell v. Stone*, 12 F.3d 213 (per curiam) (6th Cir. 1993) (applying the "but for" standard to a federal sector ADEA claim); *Browning v. Dept. of the Army*, 436 F.3d 692, 695 (6th Cir. 2006)

(applying the ADEA standard articulated in a private-sector ADEA case to federal sector ADEA claims). Accordingly, absent contrary guidance from the Supreme Court or the Sixth Circuit, the Court finds that Plaintiff must prove by a preponderance of the evidence that but for age discrimination, she would have been selected for the auditor position.

1. Direct Evidence

Plaintiff asserts Col. Bates's reference to the longevity of the selectee – training expenses were "not that big of a deal when you think of the longevity of the person they hired" – is direct evidence of discrimination based on age. (Pl. Br., Doc. No. 99 at 16.) Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *See Alberty v. Columbus Twp*, 730 Fed. Appx. 352, 356 (6th Cir. 2018). Direct evidence cannot require the finder of fact to draw any inferences to reach the conclusion that Plaintiff was not hired because of her age. *Sharp v. Aker Plant Servs. Grp., Inc*., 726 F.3d 789, 798 (6th Cir. 2013). "Direct evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor." *Umani v. Mich. Dep't. of Corr.*, 432 Fed. Appx. 453, 458 (6th Cir. 2011).

Plaintiff argues Col. Bates "used 'longevity' to mean younger people are a better hiring risk because he perceives them to stay with the employer longer." (Pl. Br., Doc. No. 99 at 16.) Defendant contends the statement, which Col. Bates denies making, is capable of multiple meanings. (Def. Br., Doc. No. 95 at 16-17.) In addition, Defendant argues that because Col. Bates did not participate in the selection process, any statements made by him are not direct evidence of discriminatory motive. (*Id*. at 17.)

As this is a motion for summary judgment, the Court will assume Col. Bates did, in fact, make the statement as Plaintiff claims. Even if he was involved in the selection process by virtue of approving the selection, this statement is capable of multiple meanings and, therefore, not direct evidence of age discrimination. "Longevity" could refer to the age of the successful candidate; to the fact that the position, which was a non-dual track position would not require the holder to resign at the conclusion of military service[2]; to the Guard's commitment to ensuring all employees receive the necessary training to do their jobs; or to the fact that some amount of training is a minimal investment in an employee they expect to remain in the position for some period of time. In other words, the use of the word "longevity" in this context is capable of meanings other than as a reference to the applicants age or predicted lifespan.

Accordingly, the Court finds Plaintiff has not established a prima facie case via direct evidence of age-based discrimination.

2. Circumstantial Evidence

The remainder of Plaintiff's evidence of discrimination is circumstantial. Circumstantial evidence is proof that "does not on its face establish discriminatory animus but does allow a finder of fact to draw a reasonable inference that discrimination occurred." *Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir. 2003). The Sixth Circuit applies the evidentiary framework of *McDonnell Douglas* to analyze circumstantial evidence of ADEA claims. *See Geiger v. Tower Automotive*, 579 F.3d 614, 622 (6th Cir. 2009).

---

[2]     *See* Bates Depo, Doc. No. 95-7 at 4-5 (discussing "longevity" with regard to dual-status versus non-dual status positions).

To state a prima facie case, Plaintiff must establish: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she applied and was rejected for the auditor position; (3) she was qualified for the position; and (4) someone significantly younger was hired. *Id*. Once a prima facie case has been established, the burden of production shifts to Defendant to provide a legitimate reason for the adverse employment action. "This burden is one of production only, not of persuasion." *Gray v. Toshiba Am. Consumer Prod., Inc.*, 263 F.3d 595, 599 (6th Cir. 2001).

If Defendant offers a legitimate reason for not hiring Plaintiff, the burden shifts to Plaintiff to prove, by a preponderance of the evidence that Defendant's proffered reason was not its true reason but was, in fact, a pretext for illegal discrimination. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256. Plaintiff has the burden of persuasion to demonstrate that age was the "but-for" cause of the adverse employment decision. *See Gross*, 557 U.S. 167, 177-78, n.4. At this final stage, "[t]he burden of producing evidence of pretext essentially merges with the burden of persuasion, which always lies with the plaintiff." *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 624 (6th Cir. 2006) (citing *Gragg v. Somerset Tech. Coll.,* 373 F.3d 763, 768 (6th Cir. 2004) (internal quotations omitted)). Plaintiff must show, in essence, that Defendant's "'business decision' was so lacking in merit as to call into question its genuineness." *Id*. at 625; *see also*, *Browning v. Dep't of Army*, 436 F.3d 692, 696-98 (6th Cir. 2006) (allowing "traditional management prerogatives" in the Army's decision not to promote plaintiff).

The parties do not dispute Plaintiff has established a prima facie case of age-based discrimination and that Defendant has provided a legitimate reason for not hiring Plaintiff. (*See* Def. Br., Doc. No. 95 at 18; Pl. Br., Doc. No. 99 at 17.) Accordingly, the only issue is whether

Plaintiff has provided evidence from which the trier of fact could conclude the proffered "legitimate reason" for hiring Ms. Miller and not hiring Plaintiff, was a "mere pretext" for discrimination. Plaintiff may offer evidence showing: (1) Defendant's stated reason had no basis in fact; (2) the stated reason did not actually motivate Defendant; or (3) the stated reason was insufficient to warrant the adverse employment action. *Loyd*, 766 F.3d 580, 590 (6th Cir. 2014) (citing *Wexler v. White's Fine Furniture, Inc*., 317 F.3d 564, 576 (6th Cir. 2003) (*en banc*)).

To this point, Plaintiff offers the following evidence that Defendant's stated reasons for not selecting her were pretext for discrimination: she was better qualified for the position than the selectee; there were irregularities in the selections process; Maj. Hess had a history of favoritism toward younger employees; and Col. Bates, who approved Maj. Hess's selection of Miller, used the word "longevity" when referring to the tenure of the selectee. The Court considers whether this evidence, taken as a whole, establishes a genuine issue for trial.

A. Qualifications

Plaintiff argues that she was the better qualified candidate. (*See* Pl. Br., Doc. No. 99 at 22.) "Whether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination." *Davis v. Cintas Corp*., 717 F.3d 476, 492 (6th Cir. 2013) (*quoting Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626 (6th Cir. 2006)). If a plaintiff presents other evidence of discrimination, "that evidence, taken together with evidence that the plaintiff was as qualified or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment." *Id*. However, if "there is little or no other probative evidence of discrimination, to survive summary judgment the rejected applicant's qualifications must be so significantly better

12

than the successful applicant's qualifications that no reasonable employer would have chosen the latter applicant over the former." *Id*.

Plaintiff argues that Ms. Miller's longer experience as a CPA (by one year), is outweighed by Plaintiff's slighter longer experience (13 years to Miller's 10 years) working in accounting and more relevant experience auditing government programs. (*Id*.) In addition, Plaintiff had already undergone the required training for the position. (*Id*. at 20-21.) In comparison, Miller was a multi-lingual CPA with international experience working for a big four accounting firm. Subjectively, Maj. Hess found Miller to be a more effective communicator. (Hess Decl., Doc. No. 95-2 at 54-55.) ("[Miller] appeared to communicate in a more professional and yet amicable manner than [Plaintiff].)

Plaintiff has not shown her qualifications are so significantly better than Miller's that no reasonable employer would have chosen Ms. Miller. However, Plaintiff does not rely solely on her allegedly superior qualifications as evidence of discrimination. Accordingly, the Court will consider this evidence together with the other evidence presented.

B. Irregularities in the Selection Process

In addition to her assertion that she was better qualified for the position, Plaintiff has articulated complaints about irregularities in the interview and selection process.[3] The

---

[3] Plaintiff initially complained that she was entitled to priority consideration for the position, but now acknowledges that this was incorrect. (Doc. No. 102, ¶¶ 62-63.) ("Plaintiff admits that she thought that she was entitled to priority consideration under applicable personnel regulations at the time she filed the complaint, but she no longer contends this after completion of the discovery process.")

complaints about the process boil down to a sense of unfairness and a belief that Ms. Miller

was "preselected" for the position.[4]

Before the interview, Maj. Hess spoke with Ms. Miller's husband about the non-dual

status auditor position. (Doc. No. 108, ¶ 12; Hess Dep., Doc. No. 100-1 at 4-5.) During the

interview, Maj. Hess indicated there was some urgency to fill the position so the selectee could

attend training in April. (Doc. No. 101, ¶ 29.) "[Plaintiff] knew that she did not need such

training so it appeared Maj. Hess was looking elsewhere to fill the position." (Pl. Br., Doc. No.

99 at 21.) Maj. Hess did not allow Plaintiff to discuss her credentials during the interview,

stating, "I am well aware of your qualifications. I don't want to discuss it." (Doc. No. 108, ¶

14.) Finally, Maj. Hess took good notes of his interview with Plaintiff, but failed to take such

detailed notes of his interview of Miller.[5] (Hess Depo., Ex. 13, Doc. No. 95-2.) Plaintiff claims

this was in preparation to justify her nonselection. (Pl. Br., Doc. No. 99 at 20.)

Finally,[6] Plaintiff alleges Maj. Hess never should have considered Ms. Miller's

application because he should have selected Plaintiff at stage two. (Pl. Br., Doc. No. 99 at 18.)

---

[4]     Plaintiff's statement that a friend told her Miller's husband was "bragging that his wife was going to get the position" is hearsay and not properly considered on a motion for summary judgment. *Back v. Nestle USA, Inc.*, 694 F.3d 571, 579 (6th Cir. 2012) (plaintiff limited to admissible evidence when showing issue of material fact as to pretext).

[5]     Specifically, the interview notes of Ms. Miller's interview did not note a response to seven of the 19 interview questions. (*Id*., Ex. 15.)

[6]     Plaintiff also cites to a document that purports to be an Internal Review Section Listing dated February 15, 2011, and lists Ms. Miller as an employee even though she was not hired until March 7, 2011, as further evidence that Ms. Miller was preselected. Defendant contends that the document "obviously" contains errors and, in any event, is not properly considered by the Court because it has not been authenticated. At the summary judgment stage, Plaintiff must present "admissible evidence" in support of her claim. An unauthenticated document is not admissible. Accordingly, the Court has not considered the document.

Essentially, Plaintiff argues that Maj. Hess's desire to interview more than two candidates for the position is evidence of age discrimination, citing *Blong v. Sec'y of the Army*, 877 F. Supp. 1494 (D. Kansas 1995).

In *Blong*, the plaintiff applied for a competitive (open to military and non-military) position for a warehouse clerk. *Id.* at 1498. Only one of the 14 employees in the warehouse was female and the plaintiff was the only qualified candidate. *Id.* at 1499. The supervisor who interviewed the plaintiff "appear[ed] to be the hiring authority responsible for the largely unexplained gender disparity in the USPFO warehouse." *Id.* at 1503. After interviewing her, the supervisor, decided he wanted to "obtain a larger applicant pool." *Id.* at 1500. The position was reannounced as an "excepted" position (open to military only) with lower qualifications than those in the original announcement. *Id.* The plaintiff was not informed the position had been reannounced and she did not apply again. *Id.* The court held that these circumstances, where plaintiff was qualified, but rejected based entirely on an inherently subjective decision to reannouncement the position to get the "best person," and the position was reannounced with lower qualifications, created an issue of fact as to whether the refusal to hire plaintiff was because of her sex. *Id.* at 1503.

Plaintiff's allegations of age discrimination are distinguishable from those circumstances in *Blong*. Here, Maj. Hess's decision to see the other candidates who qualified for the vacancy announcement, does not have the same hallmarks of unreasonableness as the supervisor in *Blong*. Maj. Hess asked only to see the remaining candidates who qualified for the vacancy. He did not insist the position be reannounced to allow for a larger pool of less qualified candidates under the guise of searching for the "best person."

C.  Favoritism Toward Younger Employees

Plaintiff presents evidence to suggest Maj. Hess favored younger employees.  The evidence provides only weak support for Plaintiff's age discrimination claim.  Plaintiff states that Capt. Moore was young and inexperienced when Maj. Hess accepted her into an entry level position and allowed her to be trained as an auditor.  Plaintiff alleges Maj. Hess also hired another young employee as if their mere presence in an entry level position is evidence of favoritism.  Defendant notes that Maj. Hess also brought David Walchak into Internal Review at age 52. (Def. Br., Doc. No. 95 at 21 (citing Walchak Decl., Doc. No. 96)).

Plaintiff complains Capt. Moore was reviewed more regularly and was ultimately promoted, by someone other than Maj. Hess, to a GS-11 auditor position. (Doc. No. 108, ¶ 6, 8.)  Defendant adds that Plaintiff and David Walchak were also promoted while working for Internal Review. (Doc. No. 108, ¶¶ 7, 8.)   Moreover, Maj. Hess was a supervisor for less than half of the time Plaintiff was in Internal Review, and Plaintiff made no complaints of age discrimination until she was not chosen for the auditor position.

D.  The "Longevity" Comment

After Plaintiff learned she had not been selected, she requested a meeting with Col. Bates and Col. Andy Hardin. (McGrady Aff., Doc. No. 101, ¶ 34.)  Maj. Hess had discussed his reasons for selecting Ms. Miller for the position with Col. Bates and Col. Bates signed off on the selection. (Bates Depo., Doc. No. 95-2 at 13, 15.)  McGrady asked the colonels how they could justify the expense of training someone when McGrady already had the requisite training. (McGrady Depo., Doc. No. 95-1 at 80.)  McGrady claims Col. Bates said, "Well, when you consider the longevity of the selectee, it's not that big of a deal." (*Id.*)  Plaintiff argues Col. Bates was referring to the age of the new selectee.

"[D]iscriminatory remarks, even by a nondecisionmaker, can serve as probative evidence of pretext." *Blizzard v. Marion Tech. College*, 698 F.3d 275, 287 (6th Cir. 2012). Col. Bates's comment about the longevity of the candidate is ambiguous. He does not clearly and unambiguously refer to Ms. Miller's youth as compared to Plaintiff. It could be that he was referring to the relatively short duration of training as compared to a long-term job placement. In fact, the Court finds it unlikely that Col. Bates expected either candidate to serve in the position until their retirement (or death). Even Plaintiff was more than ten years away from retirement age. Nevertheless, the statement is ambiguous enough that a trier of fact could find is evidence of age discrimination.

E. Ultimate Burden

Plaintiff's burden at this stage is not merely to produce evidence capable of persuading a factfinder to reject Defendant's explanation. "[A] prima facie case and sufficient evidence to reject the employer's explanation may permit a finding of liability." *Carter v. Toyota Tsusho America, Inc.*, 529 Fed. Appx. 601, 609 (6th Cir. 2013) (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012). However, rejection of the employer's legitimate, nondiscriminatory reasons for its action does not compel judgment for the plaintiff. *Reeves v. Sanderson Plumbing Products, Inc*. 530 U.S. 133, 146 (2000). "The ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that plaintiff's proffered reason is … correct.'" *Id*. (quoting *St. Mary's*, 509 U.S. at 511). Plaintiff must provide proof sufficient that a reasonable finder of fact could conclude that if not for Plaintiff's age, Col. Hess would have chosen Plaintiff over Ms. Miller. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993)

("It is not enough to *dis* believe the employer; the fact finder must *believe* the plaintiff's explanation of intentional discrimination.") (emphasis in original).

A showing of pretext is not always adequate to sustain a finding of liability. *Id.* As the Supreme Court stated in *Reeves*:

> Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted evidence that no discrimination occurred. *Reeves*, 530 U.S. at 148.

Though it is a close question, considering all of the evidence in the light most favorable to the Plaintiff, the Court finds Plaintiff has presented sufficient evidence from which a trier of fact could conclude Defendant's reason for not selecting Plaintiff was pretext for age discrimination. Plaintiff has raised a question of fact regarding her qualification for the position as compared with those of the ultimate selectee, Ms. Miller. Defendant concedes Plaintiff was qualified for the position and that his decision to hire Ms. Miller was based, in part, on subjective criteria – her superior interview. In addition, Plaintiff presented evidence that Maj. Hess may not have conducted an entirely unbiased hiring process. While bias toward Ms. Miller, if it existed, may not have been based on age, Plaintiff has presented evidence from which a trier of fact could so conclude. Finally, Plaintiff has presented some evidence, although slight, from which a trier of fact could conclude the decision not to hire plaintiff was because of her age.

## III. CONCLUSION

For the reasons stated, Defendant's Motion for Summary Judgement is **DENIED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE